[Cite as *State v. Ward*, 2016-Ohio-5354.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26773 |
| | : | |
| v. | : | Trial Court Case No. 14-CR-3958 |
| | : | |
| DEVINE D. WARD | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of August, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, Post Office Box 291771, Kettering, Ohio 45429-1771
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

        {¶ 1} Devine D. Ward appeals from his conviction and sentence following a jury

trial on two counts of aggravated robbery with accompanying firearm specifications.

{¶ 2} Ward advances five assignments of error. First, he alleges ineffective assistance of counsel based on his attorney's failure to exercise a for-cause or a peremptory challenge on a particular juror. Second, he asserts ineffective assistance of counsel based on his attorney's failure to renew a Crim.R. 14 motion for severance of charges during trial. Third, he contends the trial court's failure to sever the charges deprived him of his right to testify on his own behalf. Fourth, he alleges ineffective assistance of counsel based on his attorney's failure to present a complete defense. Fifth, he claims the introduction of statements made by one of the robbery victims on a 911 call violated his Sixth Amendment confrontation rights.

{¶ 3} The present appeal stems from the robbery of two delivery drivers on two consecutive days in November 2014. On the first day, Charles Thompson was delivering his last order for the Submarine House at around 8:30 p.m. His instructions directed him to an address on Prescott Avenue in Dayton that appeared to be vacant. Thompson called the phone number on the delivery receipt. The person who answered the phone told him he had the wrong house and directed him to another address on the same street. Thompson parked in front of the new address and exited his car. He testified at trial that he began walking toward the house when Ward approached on foot. Thompson shined a flashlight in Ward's face and immediately recognized him. Thompson explained that he previously had delivered pizzas to Ward while working as a delivery driver for Dominos. As Thompson and Ward "locked eyes," Ward drew a handgun and said, "You know what this is." Ward proceeded to put the gun to Thompson's head and demand money. Ward then ordered Thompson to his knees, took money from his pocket, and fled in a black,

two-door car with dark windows. Thompson pursued Ward in his own van for a short time before seeing a police officer and reporting the incident.

{¶ 4} The following day, Erron Daniel,[1] a delivery driver for the Dragon City Chinese Restaurant, called 911 and reported being robbed at gunpoint near Arlene Avenue and Prescott Avenue in Dayton. He described the perpetrator as a black male in a black hoodie who left the scene in a black Toyota or Mazda car. Daniel had been given a delivery address and told to call the phone number provided when he arrived. The delivery address was one house down from where Thompson had been directed the previous day. When Daniel arrived, the person who placed the order told him to go further down the street toward the intersection of Arlene Avenue and Prescott Avenue, where he then was robbed.

{¶ 5} Officer Mark Orick testified that he participated in the investigation of both robberies. With respect to the first robbery, he received Ward's name as a suspect. The night of the second robbery, he received a cell phone number of a possible suspect. That same night, he had the cell phone "pinged" and tracked it to a field near Jefferson High School. Officers responded to that location and found Ward. They also saw a black Mazda parked there.

{¶ 6} Ward was arrested and transported to jail, where Detective Debra Ritchey interviewed him. After he waived his *Miranda* rights, Ritchey asked him about both robberies. Ward initially denied involvement. After Ritchey told him that he had been identified by both victims and that a Mazda had been found at the scene of his arrest,

---

[1] We have seen Daniel's last name spelled "Daniel" and "Daniels" at various places in the record. The predominant spelling, which appears to be correct, is "Daniel." We will use that spelling herein.

Ward responded that he did not commit any robberies and that he had not been driving a black Mazda. At that point, however, Ritchey had not told Ward the color of the car used in the robberies. Ward ultimately admitted to Ritchey that he had participated in the second robbery with a friend. He claimed, however, that he had used a black cell phone and had held it as if it were a gun. Ward did not admit participating in the first robbery.

{¶ 7} After the State rested, the case went to the jury, which found Ward guilty on both counts of aggravated robbery and the accompanying firearm specifications. At sentencing, the trial court reviewed a PSI and imposed a six-year prison term for the first robbery and a concurrent four-year prison term for the second robbery. It also imposed consecutive three-year sentences for the firearm specifications, resulting in an aggregate sentence of 12 years in prison. This appeal followed.

{¶ 8} In his first assignment of error, Ward contends his trial counsel provided ineffective assistance by failing to challenge a particular juror either for cause or peremptorily. The juror in question stated during voir dire that he worked as a delivery driver for a beer distributor and knew people in his profession who had been robbed at gunpoint. He agreed that the nature of Ward's case gave him "some pause for concern." He believed the fact that Ward's case involved the robbery of delivery drivers would make it difficult for him to sit as a juror. When asked whether he could set aside his feelings and judge the case solely based on the evidence, he responded: "I would like to think that I would, but I'm not sure." The juror explained that he had observed the emotional impact being robbed had taken on other drivers. When asked whether that would affect his ability to sit as a juror, he responded:

I would like to say I would be fair. But I'm saying past experiences

and sympathizing with the people and the stuff that's happened to them, knowing what happened to them even though there wasn't a physical thing, mentally and what it's done to their lives up until now, it makes it really hard to, you know, sit on one—and witness going through this again. You know what I'm saying? You know, there's—it's—just for example, there was an older lady that was pistol whipped to give money away and was severely injured and had to spend a year off work. And I was really close to her. And I tell you what, if I'd have got my chance to get a hand on that guy, I would have lobbied some justice. You know?

So I'm just saying, it's—being—you know, I'm sympathetic to the carry out people that it's happened to. And through thirty-five years I've had a number of occasions to be close to people that it's happened to. And like I said, just having a—I'm—actually, in my line of work I've had a pistol pointed in front of me. I know the feeling, you know. * * *

(Tr. at 169-170).

**{¶ 9}** To prevail on an ineffective-assistance claim, a defendant must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that trial counsel's representation fell below an objective standard of reasonableness. *Id.* Prejudice exists and a reversal is warranted only where a defendant shows a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

**{¶ 10}** We find no ineffective assistance of counsel here. We cannot know, of

course, why defense counsel failed to challenge the juror at issue, either for cause or through a peremptory challenge. But even if we assume arguendo that defense counsel provided deficient representation by not seeking to have the juror stricken from the pool, Ward cannot demonstrate prejudice. "When a defendant bases an ineffective-assistance claim on an assertion that his counsel allowed the impanelment of a biased juror, the defendant 'must show that the juror was actually biased against him.' " (Citations omitted.) *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 67.

{¶ 11} In this case, the juror in question never stated that he could not be fair or that he was actually biased against Ward personally, as is required to establish prejudice. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 213. The juror expressed unease and conveyed his belief that the nature of the cause would make it difficult for him to be objective. This is not the same as admitting or acknowledging a personal bias against Ward, who the juror acknowledged remained innocent in his eyes. We note too that the use of peremptory challenges "is inherently subjective and intuitive," meaning that the record rarely will reveal ineffective assistance. (Citations omitted) *Id.* at ¶ 214. Ward's case is one where the record does not. His first assignment of error is overruled.

{¶ 12} In his second assignment of error, Ward asserts ineffective assistance of counsel based on his attorney's failure to renew a Crim.R. 14 motion for severance of the two aggravated-robbery charges during trial.

{¶ 13} The record reflects that Ward's attorney filed a pretrial motion to have the two aggravated-robbery charges tried separately. The trial court overruled the motion, and defense counsel did not renew the request during trial. Ward argues that his

attorney's failure to renew the motion resulted in the waiver of all but plain error and constituted prejudicially deficient performance. We disagree. As explained more fully in our analysis of Ward's third assignment of error below, joinder of the two offenses for trial was appropriate and severance was not required. Because the trial court's denial of the pretrial motion for severance was proper, and we see nothing that would have changed the result if the motion had been renewed at trial, defense counsel did not provide ineffective assistance by failing to renew the motion. The second assignment of error is overruled.

{¶ 14} In his third assignment of error, Ward argues that the joinder of both aggravated-robbery offenses for trial deprived him of his right to testify on his own behalf. He asserts that he wanted to testify about the robbery of the Submarine House delivery driver but not the robbery of the Dragon City driver. According to Ward, he did not wish to testify about the second robbery because he already had confessed to it. He maintains that the trial court's failure to sever the two robberies for separate trials deprived him of the opportunity to make this choice, effectively forcing him not to testify at all.

{¶ 15} Upon review, we find Ward's argument to be unpersuasive. "The law favors joinder to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish the inconvenience to witnesses." *State v. Broadnax*, 2d Dist. Montgomery No. 21844, 2007-Ohio-6584, ¶ 33. Here the two aggravated robberies were permitted to be joined for trial because they were "of the same or similar character," as required by Crim.R. 8(A). The virtually identical crimes occurred on consecutive days in the same location. They both involved the armed robbery of a delivery driver by a perpetrator who fled in a small

black car. Under these circumstances, joinder undoubtedly was proper. *Id.* at ¶ 34 ("Joinder was proper in this case because all of the offenses at issue were of the same or similar character, being aggravated robberies, all were committed within a six day period. All of the offenses involved a similar modus operandi and were committed the same way, and all of the offenses involved a common scheme, plan or course of criminal conduct.").

{¶ 16} When offenses are joined, a defendant still may seek severance under Crim.R. 14. To prevail on a claim that the trial court erred in denying severance, Ward must demonstrate that his rights were prejudiced. "To affirmatively show that his rights have been prejudiced by the joinder, the defendant must furnish the trial court with information sufficient to allow the court to weigh the considerations favoring joinder against the defendant's right to a fair trial, and the defendant must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *Id.* at ¶ 37. A defendant normally cannot establish prejudice, however, where either (1) the evidence of each of the crimes joined at trial is simple and direct or (2) the State could have introduced evidence of one offense in a separate trial of the other offense had severance been granted. *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

{¶ 17} Here Ward has not demonstrated prejudice resulting from the trial court's failure to sever the charges against him. This court rejected an argument quite similar to his in *Broadnax*, reasoning:

> To show that he was prejudiced by the joinder of these aggravated robbery offenses for trial, Defendant complains that he wanted to testify as to the Trotwood Speedway robbery while remaining silent as to the Harrison

Township robberies. Defendant claims that, as to the Trotwood robbery, he wanted to provide the jury with the same explanation he gave to police for why he was in the Buick Regal they stopped just five minutes after the Speedway station was robbed, and why he ran from police. Defendant further claims that as to the Harrison Township robberies, he intended to present an alibi defense for those offenses, and he wanted to avoid exposing his prior criminal record to the jury.

Defendant has not made a convincing showing that he had important testimony to give concerning one charge and a strong need to refrain from testifying concerning the others. *State v. Roberts* (1980), 62 Ohio St.2d 170, 176. The mere possibility that a defendant might desire to testify on one count and not the other is insubstantial, speculative, and insufficient to show prejudice. * * * Further, the prejudice Defendant suggests is not in the jury's confusion of the facts concerning the multiple alleged offenses, but in disbelieving his alibi defenses if his testimony concerning other offenses caused the jury to reject his credibility. That is merely a tactical concern, not one relating to the fairness of Defendant's trial.

More importantly, Defendant was not prejudiced by the joinder of these robbery offenses for trial because the evidence pertaining to each offense is simple and direct. * * * All of the robberies involve different stores and different witnesses. Witnesses in each of the robberies independently identified Defendant as the robber. We find the evidence as to each offense is straight-forward and uncomplicated. Under those circumstances, it is

improbable that the trier of facts would confuse the evidence or improperly consider the testimony concerning one offense as corroborative of the other offenses. * * * Defendant fails to affirmatively demonstrate prejudice resulting from the joinder of these offenses for trial. We cannot find that the trial court abused its discretion when it denied Defendant's motion to sever the charges.

*Broadnax* at ¶ 39-41.

{¶ 18} We reach the same conclusion in Ward's case for at least three independent reasons. First, he has not made a convincing showing that he had important testimony to give concerning the robbery of the Submarine House driver and a strong need to refrain from testifying about the robbery of the Dragon City driver. Ward has not identified what his testimony would have been with regard to the first robbery. Furthermore, it is unclear why his confession to the second robbery created a strong need for him to refrain from testifying in that case. He simply could have admitted to the jury what he had admitted to the police while still maintaining his innocence with regard to the first robbery. Indeed, his willingness to admit one of the robberies seemingly would have made his denial of the other one more credible. Second, the motion for severance Ward filed below failed to cite his desire to testify in just one of the two cases as a basis for finding prejudice. (*See* Doc. #28, 35). Because Ward did not even mention this argument below, he necessarily failed to provide the trial court with information sufficient to allow it to weigh the considerations favoring joinder against his right to a fair trial. Third, our review of the record convinces us that Ward was not prejudiced by the joinder in any event because the evidence pertaining to each offense was simple and direct, and the evidence from one would have

been admissible in the other. Accordingly, his third assignment of error is overruled.

{¶ 19} In his fourth assignment of error, Ward alleges ineffective assistance of counsel based on his attorney's failure to present a complete defense. Specifically, he contends counsel provided ineffective assistance by (1) identifying Tationna Knight in a pretrial notice as an alibi witness with regard to the Dragon City robbery but not the Submarine House robbery and (2) subsequently not calling her as a trial witness at all.

{¶ 20} On the record before us, Ward cannot possibly demonstrate ineffective assistance of counsel on either of the foregoing grounds. The appellate record does not reflect why defense counsel did not identify Knight as an alibi witness for the Submarine House robbery or why defense counsel did not call her as a trial witness at all. With regard to the former issue, Knight may have been *unable* to provide an alibi for the robbery of the Submarine House driver. Because the record does not establish that Knight had any alibi testimony to provide about that robbery, Ward cannot show prejudicially deficient representation in counsel's failure to list her as an alibi witness. With regard to counsel's failure to call Knight to provide alibi testimony in connection with the Dragon City robbery, counsel's decision likely was influenced by the fact that Ward already had admitted committing that offense. In light of Ward's confession, defense counsel reasonably could have concluded that calling Knight as an alibi witness would be counterproductive. The fourth assignment of error is overruled.

{¶ 21} In his fifth assignment of error, Ward contends the trial court violated his Sixth Amendment confrontation rights by allowing the State to introduce into evidence a partial recording of the 911 call from Erron Daniel, the victim of the Dragon City robbery, who did not testify at trial.

**{¶ 22}** Ward objected to the recording being admitted, arguing that Daniel's statements on the recording were testimonial in nature. Over Ward's objection, the trial court admitted a portion of the recorded call into evidence, concluding that the primary purpose of Daniel's statements was to address an ongoing emergency and, therefore, that the statements were non-testimonial. That being so, the trial court found no Sixth Amendment violation.

**{¶ 23}** On appeal, Ward asserts that no emergency was in progress and no immediate threat existed when Daniel made his 911 call. To the contrary, Ward contends that Daniel and the perpetrator both had left the scene of the robbery when the call was made. Ward notes too that Daniel said he was unharmed during the call. Daniel also had spoken with his employer before dialing 911. Under these circumstances, Ward asserts that Daniel's statements on the 911 recording were testimonial, making their use at trial in his absence a violation of his confrontation rights.

**{¶ 24}** Upon review, we find Ward's argument to be unpersuasive. "The U.S. Supreme Court has recognized that a defendant's Sixth Amendment right to confront witnesses against him is violated when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendant having had the opportunity to cross-examine the declarant." *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 26, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Testimonial statements include statements " 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *State v. Kelley*, 2d Dist. Clark No.

2011 CA 37, 2012-Ohio-1095, ¶ 58, quoting *Crawford* at 52. " '[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' " *Eicholtz* at ¶ 26, quoting *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), paragraph one of the syllabus. "Typically, 911 calls made to report an ongoing emergency that requires police assistance to resolve that emergency are not 'testimonial' in nature and therefore the Confrontation Clause does not apply." (Citations omitted.) *State v. McDaniel*, 2d Dist. Montgomery No. 24423, 2011-Ohio-6326, ¶ 24.

{¶ 25} The portion of the 911 call played for the jury is one minute and twenty seconds long. Daniel can be heard telling the 911 operator that he had "just" been robbed at gunpoint near Arlene Avenue and Prescott Avenue while making a delivery. He reported the direction that the perpetrator had fled. He also described the perpetrator as a black male in a black hoodie who had fled in a small, black Mazda or Toyota. Finally, he gave the operator his own name. Elsewhere in the full recording of the 911 call, Daniel reported that he was unharmed and that the robbery had occurred no more than two minutes earlier. The tone and volume of his voice suggested that he remained under the stress and excitement of the incident.

{¶ 26} In rejecting Ward's confrontation argument, the trial court reasoned:

In the first place the Court would start as I've listened to the part of

the tape with counsel that the State intends to play, it's clear to me that Mr. Daniel['s] utterances are excited based on his voice and the nature of the call and listening to it. It's clear to me that it's certainly a present sense impression. It happened within moments of the call. So those two hearsay exceptions would put it in.

And then you get to the primary purpose. And what is the primary purpose? And I believe, again, as [defense counsel] accurately states, you got to look at the totality of the circumstances but I think objectively the primary purpose was to deal with an ongoing emergency, that is, an armed guy that just robbed somebody at gunpoint and whether they're still in the proximity. And I think that's an emergency.

And I will also say, listening to the tape, I think there's virtually a complete absence of interrogation by law enforcement. Almost entirely what's on the tape is what's being volunteered on this call.

Now, so therefore, the Court's going to rule that this is non-testimonial in nature. It was a call made in response to an emergent situation that had not been resolved. To suggest that once the person flees there's no longer an emergency I think is a much too narrow drawing of the exception or what's emergent versus non-emergent and I'm not going to do it. * * *.

(Tr. at 335-336).

{¶ 27} We agree with the trial court. Although Ward has not raised a hearsay argument on appeal, we harbor no doubt that Daniel's statements qualified as excited

utterances and, therefore, were admissible under the Ohio Rules of Evidence. With regard to the Confrontation Clause, we note that "whether an emergency exists and is ongoing is a highly context-dependent inquiry." *Michigan v. Bryant*, 562 U.S. 344, 363,131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). The mere fact that Daniel was unharmed and that the perpetrator had fled the immediate location did not negate the existence of an ongoing emergency. "An assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.*

{¶ 28} The primary purpose of the 911 call here was to assist police in apprehending a dangerous criminal who had just robbed Daniel at gunpoint before fleeing into the night. These circumstances presented a continuing emergency situation. *See United States v. Hayden*, 612 Fed.Appx. 381, 384 (7th Cir.2015) ("[T]he 911 call at issue and statements to police were non-testimonial because their primary purpose was to provide police officers with basic information to address an ongoing emergency. The statements occurred within minutes of the robbery while an armed suspect was still fleeing the scene and they provided only basic information that might enable police to capture the suspect. The content of the call was limited to informing police that a robbery had occurred; the location of the robbery; that the robber wore a gray and black striped shirt; that the robber was armed; and that the robber fled in a certain direction. For this reason, the statements were clearly non-testimonial and it was proper for the trial court to allow them into evidence."); *see also Cleveland v. Merritt*, 8th Dist. Cuyahoga No. 103275, 2016-Ohio-4693, ¶ 10, 19 (recognizing that an ongoing emergency situation can exist after the perpetrator has left the scene if a potential threat to the police or the public

remains).

{¶ 29} Finally, nothing in the 911 recording indicates that Daniel had traveled far from the scene of the robbery, if he had left it at all when he made his 911 call, and the fact that he had spoken to his employer before calling 911 was inconsequential. The full 911 recording reflects that Daniel's boss *called him* just before he called 911, which resulted in him hanging up to place the emergency call. Based on the foregoing reasoning, we overrule Ward's fifth assignment of error.

{¶ 30} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
J. David Turner
Hon. Steven K. Dankof