[Cite as *State v. Clark*, 2018-Ohio-4042.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-14 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-288 |
| | : | |
| WILLIAM H. CLARK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of October, 2018.

. . . . . . . . . . .

R KELLY ORMSBY, Atty. Reg. No. 0020615, Darke County Prosecutor's Office, Appellate Division, 504 South Broadway, Greenville, Ohio 45331
    Attorney for Plaintiff-Appellee

HILARY LERMAN, Atty. Reg. No. 0029975, 249 Wyoming Street, Dayton, Ohio 45409
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  This matter is before the Court on the December 26, 2017 Notice of Appeal of William H. Clark.   Clark appeals from the trial court's December 1, 2017 judgment, issued following a remand from this Court directing the trial court to consider Clark's pro se motion for a new trial, pursuant to Crim.R. 33, as a petition for postconviction relief, pursuant to R.C. 2953.21.   *See State v. Clark*, 2017-Ohio-120, 80 N.E.3d 1251 (2d Dist). Upon remand, trial court denied the petition without a hearing.   We hereby affirm the judgment of the trial court.

{¶ 2}  On November 24, 2014, Clark was indicted on 11 counts of rape of a person less than 13 years of age, in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree. The allegations covered a period of time from July 2011 to August 2014, and the victim was Clark's stepchild. Because of the age of the victim, Count I carried potential sentences of fifteen years to life or life without parole, and the remaining counts all carried a potential sentence of 10 years to life.   Pursuant to a plea agreement, the State agreed to dismiss six counts of rape and to amend five counts to sexual battery (victim – stepchild under 13), in violation of R.C. 2907.03(A)(5) and (B), felonies of the second degree.   The parties jointly recommended that Clark serve a mandatory aggregate sentence of 25 years in prison, namely five years on each count to be served consecutively, with five years of mandatory postrelease control.

{¶ 3} On February 13, 2015, Clark, represented by counsel, pled guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).   Clark's plea form provided: "By pleading guilty pursuant to *North Carolina v. Alford* I DO NOT admit committing the offenses, but I enter this plea to avoid the risk of convictions on

more serious charges with the possibility of more serious penalties." The form further provided that the parties understood "that the Defendant must be classified as a Tier III sex offender, requiring quarterly registration for life once the Defendant is released from prison." Finally, the form provided that the parties also understood that, "should the Court sentence the Defendant in accord with the joint recommendation of the parties, that sentence may not be appealed pursuant to Section 2953.08(D)(1) of the Ohio Revised Code." The trial court found Clark guilty, imposed the recommended sentence, and designated Clark a Tier III sex offender.

**{¶ 4}** On August 5, 2015, Clark filed, pro se, "Defendant's Motion for New Trial Pursuant to Criminal Rule 33(A)(6)."[1] Clark's motion provided in part as follows:

<u>General Allegations</u>

Defendant William H. Clark, contends that on July 7th, 2015, he received a direct correspondence from [the victim's mother] in the form of a verified affidavit that she was "told by [the victim]: in the beginning of November 2014 after making the allegations against defendant Clark, were otherwise false, and that other person(s) [uncles R. and B.] committed the acts and that this exculpatory evidence was relayed to a state agent (caseworker) whom defered [sic] the information, which was never presented to defense counsel prior to trial pursuant to Criminal Rule 16 (d), (e), or (f), implying an intentional non-disclosure of Brady material.

**{¶ 5}** Clark argued that if "the State would had [sic] disclosed DNA evidence

---

[1] Crim.R. 33(A)(6) provides that a trial court may grant a new trial on motion of a defendant "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."

regarding the presence of [the victim's uncles' DNA]," he never would have entered into the plea agreement.

{¶ 6} Clark attached a July 7, 2015 affidavit of the victim's mother, who averred as follows:

This is an affidavid [sic] for William Clark's case. I [H.C.] was told by [the victim] in the begining [sic] of November 2014 after she made the accusation that William Clark did not touch her. She told me that it was her uncle [R.] not Bill. She also said that her other uncle [B.] was touching her. Then she said it was all three. Then refused to talk anymore. I called the case worker and told her [the victim] had changed her story all the case worker said is that might happen. On November 19th 2014 [the victim] told me she said and done this so she could go live with her biological father * * *. On November 22nd she moved in with her biological father.

{¶ 7} Clark also attached his own affidavit, averring his innocence. He asserted that the State was made aware of the false allegations but failed to inform defense counsel. Finally, Clark averred that his "guilty plea to the charges was made under durress [sic], and not willfully, intelligently or knowingly made, but coerced to avoid enhanced penalty, that I now demand relief from." In the event that he was barred from relief under Crim.R. 33, Clark requested that the trial court review his motion as a petition for postconviction relief.

{¶ 8} The State filed its "Response to Defendant's Motion for New Trial" on August 5, 2015. The State argued that "[s]ince the Defendant chose not to go to trial, he cannot be granted a 'new trial.'" The State argued as follows:

It is also worth noting that during the investigation stage of this case, the Defendant confessed in great detail to the sexual crimes he was alleged to have committed. His wife * * * almost immediately sided with him against the victim, her daughter, and said the girl was unreliable. The Defendant attaches an affidavit from his wife again claiming that her own daughter is an unreliable witness.

Other claims made by the Defendant concerning evidence admitted at trial are obvious nonsense, as there was no trial. He also claims that the State did not provide the caseworker's report in discovery, but the State's copy of discovery provided to defense counsel (Randal E. Breaden) does contain the report of Teresa Maples, Investigator for Children's Services. The Defendant even claims that the State did not provide DNA evidence in discovery, but there never was any DNA evidence in this case.

* * * [Clark] was confronted with all of the evidence against him and chose to agree to twenty-five years in prison rather than life in prison. Based in large part upon his detailed confession of sexual conduct with his own young step-daughter, he made a wise decision in accepting the plea offer. * * * His mutually recommended sentence cannot properly be undone, by any means.

{¶ 9} On October 19, 2015, the trial court overruled "the Defendant's motion under Criminal Rule 33(A) for the reason that there was no trial where the alleged errors could have occurred. In this case, the Defendant entered pleas of Guilty. In the absence of a trial, the provisions of Criminal Rule 33 are not available to the Defendant." The court

did not address postconviction relief.

{¶ 10} On October 23, 2015, Clark filed an affidavit that provided: "a) My plea agreement was not knowingly, willfully nor intelligently made, in spite of the Crim. R. 11 Inquiry, my reply was coerced by threat of elevated penalty if I pursued trial or exercised confrontation.   b) I am innocent to [sic] these charges."

{¶ 11} On November 6, 2015, Clark appealed the trial court's judgment, and counsel was appointed to represent him.  He asserted on appeal that the trial court should have considered his motion for a new trial as a motion to withdraw his guilty plea. He argued that his claim was "based upon the State withholding exculpatory information regarding the complainant juvenile recanting her accusations."

{¶ 12} In its initial appellate brief, the State asserted as follows:

* * * At the time the Defendant-Appellant, Clark, entered his pleas of guilty and was immediately sentenced, the court below was advised by the State that Clark's step-daughter had made allegations of rape and that Clark was questioned by detectives and made admissions (Transcript [T.], p. 17). Defense counsel then acknowledged that, "By the time I was appointed, my hands were somewhat cuffed in being able to present a defense that could have been successful at trial." (T., p. 18).   By entering into the negotiated plea agreement, Clark received a mandatory twenty-five year prison sentence, but he avoided the real possibility of a life sentence.

{¶ 13} The State argued that "the court below knew that its record clearly supported the plea, and it choose [sic] not to hazard a guess as to what kind of motion or petition Clark might have best wished to pursue.   The motion for new trial was properly

dismissed by the court in the exercise of its discretion."

{¶ 14} On appeal, this Court initially noted that Clark claimed that he became aware of the alleged recantation "through a July 7, 2015 correspondence from his wife." *Clark*, 2017-Ohio-120, 80 N.E.3d 1251, ¶ 5. This Court further noted that Clark claimed the "exculpatory" information was provided to the State's caseworker in November 2014, but it "was never disclosed to his defense counsel, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." *Id.*

{¶ 15} This Court determined that under "certain circumstances, it is * * * appropriate for courts to recast motions that are unambiguously named and presented under a specific rule when said rule has no application to the judgment at issue." *Id.* at ¶ 12. This Court held that "Clark's motion, which essentially requested the court to vacate his conviction and sentence based on a constitutional violation concerning alleged *Brady* material, [met] the statutory definition of a timely petition for postconviction relief." *Id.* at ¶ 16. This Court reversed and remanded the matter for the trial court to review the motion as a petition for postconviction relief. *Id.* at ¶ 25.

{¶ 16} On March 9, 2017, the trial court appointed counsel to represent Clark. On March 22, 2017, Clark filed a pro se "Motion to Di[s]miss Counsel Due to Conflict of Interest," which provided in part: "* * * the record shows from Court of Appeals of Ohio Second Appellate District [Defense Counsel] was DEEMED INEFFECTIVE ASSISTANCE OF COUNSEL." Thereafter, the court appointed new counsel for Clark on March 23, 2017.

{¶ 17} On October 27, 2017, newly appointed counsel for Clark filed a "Supplement to the Defendant's Petition for Post-Conviction Relief Pursuant to R.C.

2925.21(A)." Clark's Statement of Facts therein provides that on October 25, 2014, "Darke County Sheriffs were alerted to a possible sex case involving a 12 year old female." The Statement of Facts further stated:

On the morning of the 28th day of October, 2014, Darke County Sheriffs received a telephone call from Clark. (Discovery Packet, Narrative Supplement, at 8.) Darke County Sheriffs and Clark scheduled an interview and Computerized Voice Stress Analysis Exam ("CVSA Exam") for 10:00 a.m. that same day but [it] was later rescheduled for October 30, 2014. (Id.) During William H. Clark's initial interview with Detective Sergeant Michael D. Burns * * * of the Darke County Sheriffs he denied any wrong doing or any instances of alleged conduct. (Id. at 10-15.) Later on the 30th day of October, 2014, William H. Clark submitted to a CVSA Exam administered by David Hawes, * * * Detective at the Darke County Sheriffs. (Id.) * * * The CVSA Exam reported that deception was indicated as to the relevant questions asked of Clark. (Id., *see also* Computer Voice Stress Analysis Results; William H. Clark Interview dated October 30, 2014.)

Post-CVSA Exam, Detective Hawes and Clark discussed the answers to the CVSA Exam. (Id.) During this conversation, Clark made various admissions relating to the alleged conduct. (Id.) Clark left to go to work under the agreement that he would later return to continue his discussion with Detective Hawes. (Id. at 20[.]) William H. Clark returned on the 3rd day of November, 2014, and made various further admissions relating to the alleged conduct. (Id. at 20-24[.])

Based on the investigative reports of the Darke County Sheriff's Office and Darke County Jobs and Family Services, along with the evidence presented to the Grand Jury, an eleven-count indictment was issued on the 24th day of November, 2014. * * *

{¶ 18} In the first of six "claims" in his supplemental motion, Clark asserted that evidence "that had a material bearing on this matter was brought" to his attention "post-conviction which was not, and could not have been obtained by Defendant Clark prior to conviction." Clark argued that, after his sentencing, "he remained in contact with his ex-wife and State's witness and Biological Mother * * *. Witness notified Defendant and later attested via affidavit that Victim told her on or about November of 2014 that Defendant was not the perpetrator," but that it was her uncles "who committed the criminal acts." Clark acknowledged that the victim's "statements were reported to Darke County Jobs and Family Services." Clark argued that when the "victim was asked about the 'recanting' she affirmed only that she would testify in the hearing if she was required to," citing "Discovery Packet, Affirmation of Testimony." According to Clark, "[i]t is clear from the affidavit of Biological Mother that this was not merely a recanting but a revelation of the true offenders and motive behind Victim's allegations." Clark argued that the "evidence, specifically the true nature of the statements made by Victim, was withheld until the point where witness disclosed the information after the sentencing, eventually leading to this petition."

{¶ 19} In his second claim, Clark argued that the State "improperly withheld both material exculpatory and material impeachment evidence from Defendant, in violation of his Constitutional Rights, which has prejudiced Defendant." He asserted that he "was

not provided with all relevant information regarding the recanted statement of the victim." Clark argued that "Mother made it known to the case worker * * * that Victim had recanted. * * * In addition, Biological Mother told case worker that Victim had named alternative perpetrators and ulterior motives for the claim against Defendant." According to Clark,

> [t]he only evidence made available to Defendant and Defense Counsel was a copy of case worker's report, entailing a conversation with Biological Mother about the alleged recanting that stated "that would be normal for [Victim] at her age[ ]"; a brief description of a meeting with victim; and a signed statement by Victim to the prosecutor that victim was ready and willing to testify.

{¶ 20} Clark argued that the case worker "failed to pursue any further conversations or discovery with Victim in light of Biological Mother's statements or these reports were not enclosed with Discovery provided to [defense counsel]." According to Clark, "the facts attributed to the recanting of the Victim ha[d] a reasonable probability sufficient to undermine confidence in the outcome of the *Alford* plea."

{¶ 21} In his third claim, Clark asserted that "defense counsel did not provide adequate representation in this matter, substantially violating the essential duties of an attorney which materially prejudiced Defendant's case." He argued that the "failure by Prior Defense Counsel to pursue investigations into victim's statements claiming recantation, other perpetrators, and ulterior motives has undermined Defendant's ability to enter into a voluntary and knowing plea agreement." Clark argued that "when evidence that extends beyond the guise of a recant, and alleges other perpetrators and ulterior motives for fabricated charges are the real motivation behind a case, and they are

not pursued at all, let alone to the fullest extent possible, a miscarriage of justice has likely occurred."

{¶ 22} In his fourth claim, Clark argued that the "alleged confession of Defendant, although rendered moot because of the *Alford* Plea entered by Defendant, was coercive in nature and thus unreliable." Clark argued that he was "coerced by law enforcement to confess to the crimes at hand, using the Victim's * * * well-being as the basis for extracting said confession." He argued that he was told "that the evidence was overwhelming and that any contest of the charges by the Defendant would cause Victim further distress." According to Clark, he "was told these things prior to being afforded the opportunity to review any potential evidence that law enforcement was alluding to or using as the basis of the case against Defendant." He asserted that it "seems clear that Defendant was over burdened with the psychological weight of the Victim's suffering and that Defendant had no possible means of avoiding punishment. This mind-set coerced him into an involuntary *Alford* plea."

{¶ 23} In his fifth claim, Clark asserted that the State "knew that the State's Witness entered false statements against Defendant in order to procure an indictment and did not rectify the matter when it became apparent, abridging the Constitutional rights of Defendant requiring a nullity of the plea agreement." He asserted that "the tainted testimony, Victim's and Biological Mother's statements regarding the allegations against Defendant that were false and later recanted, was produced at grand jury and gave way to a tainted indictment." According to Clark, this "information is material and at the heart of this matter, and the fact that it was not included and later not reformed and corrected affects the outcome of the indictment."

{¶ 24} In his sixth and final claim, Clark asserted that during his plea and sentencing hearing, "the Court only partially complied with the standard set forth by Ohio Crim.R. 11 and its supporting case law." He argued that while "the court noted briefly the registration requirement of Tier III sex offenders, it did not explain that the registration would be 'for life.' "

{¶ 25} On November 6, 2017, Clark filed a "Request for Hearing."

{¶ 26} In its December 1, 2017 Judgment Entry Denying Motion for Post Conviction Relief," the trial court noted that the "provisions of R.C. 2953.21 are only available after the normal remedies have been exhausted. That is, after an appeal of right has been concluded or after such appeal rights have expired." The court further noted that a defendant seeking relief under R.C. 2953.21 is not automatically entitled to an evidentiary hearing. The court observed that Clark's motion was timely filed.

{¶ 27} Regarding Clark's claimed discovery of "new" evidence, the court determined that "the alleged recantations were made in November 2014. If he was not actually aware of the recantations, the Defendant could have been aware of the victim's alleged recantations prior to entering his plea in February 2015." According to the court, there "is no indication from the evidence that [Mother] and the Defendant ceased communication with the other prior to the plea. In fact, the Defendant's supplemental motion indicates that Defendant and [Mother] remained in contact after Defendant was sentenced." The court concluded that the "alleged evidence appears to have been available to the Defendant."

{¶ 28} The court noted as follows:

Actually, it appears that the recantation was actually within the

Defendant's knowledge. Based on [Mother's] affidavit, the same statements regarding the victim's alleged recantations were made to the case worker prior to Defendant's plea and sentencing. [Mother] told the case worker about the alleged victim's recantations made to [Mother] as well as possible other perpetrators in approximately fall of 2014. According to Defendant's supplemental memorandum, he acknowledges he or his counsel was provided with the case worker's report containing the victim's alleged recantation. Defendant was aware of the victim's possible recantations and identity of possible other perpetrators prior to his plea and sentence and had the opportunity to investigate such claims prior to his plea and sentence. The alleged recantation is not new evidence.

Further calling into question the strength of Defendant's argument is that the Defendant provided no affidavit from the victim herself. Defendant only provided an affidavit from [Mother] that contains hearsay statements. The contents of the affidavit are not new evidence.

{¶ 29} The court noted that "based on the strength of the Defendant's confession that he victimized the child as alleged," even if the victim's recantation were to be considered new evidence, Clark failed to establish a strong probability that the outcome would be different if a new trial were granted. Notably, the purported recantation names other perpetrators but does not exculpate Clark.

{¶ 30} Regarding Clark's assertion that the State did not provide all exculpatory evidence, the court noted that "Defendant asserts in his supplemental brief that 'if' the case worker did pursue any further conversations with the victim, the content of those

additional conversations were not provided to Defendant or his counsel through the prosecutor." The court determined that "there is no proof that there exist other exculpatory documents regarding the victim's recantation. Therefore, the Defendant's alleged *Brady* violations against the Prosecuting Attorney are pure speculation with no corroborating evidence to support post conviction relief. The Court finds no *Brady* violation."

{¶ 31} Regarding Clark's claim of ineffective assistance of counsel, the court determined as follows:

The Defendant claims that his trial attorney failed to pursue investigations into the victim's recantations and other perpetrators. There are three errors with this conclusion. First, the Defendant has not demonstrated that he was prejudiced by the lack of investigation; he has only made a feckless claim. Bald assertions are insufficient; there must be a showing that the outcome of the trial would have been different. * * * Second, the Defendant has failed to establish that he was harmed by any defect. By entering a plea agreement instead of proceeding with an evidentiary hearing, he was afforded all terms of a plea and sentencing agreement that he negotiated and accepted.

Finally, during the plea colloquy, the Court inquired about counsel's performance and the attorney-client relationship. * * * The Defendant could have raised the concern that there was insufficient investigation prior to entering his plea and accepting his mutually recommended sentence. Here, the plea colloquy clearly demonstrates that Defendant was satisfied

with his lawyer's services. Defendant's plea form that he signed also indicated that he was satisfied with his lawyer[']s services.

**{¶ 32}** The court next addressed Clark's claim that he was coerced into confessing. The court noted that at "no time did Defendant file a motion to suppress his statements. This failure demonstrates the legal principle that a motion for post conviction relief is not an opportunity to raise issues that could have been raised prior to disposition." The court noted that Clark's plea form reflects that he "expressly waived his trial rights, including the right to confront his accusers and cross-examine his accusers under oath. The Court in its colloquy also orally advised Defendant of the same." The court determined that if "undue influence was exerted by Deputy Sheriffs, then [Clark] had more than ample opportunity to complain about his treatment prior to entering a Guilty plea." The court further noted that "in reviewing Defendant's supplemental memorandum, it appears that Defendant voluntarily initiated communication with the Deputy Sheriffs." The court concluded that "if there was any police misconduct, it should have been raised and addressed prior to the plea by means of a motion to suppress." The court concluded that the "alleged facts, if believed, do not necessarily establish that the outcome of the case would have been any different if the proffered evidence had been presented. The Court finds that Defendant is not entitled to post conviction relief on said grounds."

**{¶ 33}** Regarding Clark's fifth claim, the court concluded that there "is no evidence that supports Defendant's claim that the Prosecuting Attorney had any knowledge that the victim's statements were false; indeed, there is no proof that the victim's statements were actually false." The court noted that the affidavit of the victim's mother "also states that the victim told her that it 'could have been all three' which reasonably means that the

Defendant along with two additional persons abused the victim."

**{¶ 34}** Regarding Clark's sixth claim that the court failed to substantially comply with Crim.R. 11 by failing to advise him of his life-long obligations as Tier III sex offender, the court concluded that Clark "was aware of the requirement that he register as a sex offender for life prior to entering his plea. The requirement of lifetime registration was contained in the Guilty Plea form filed February 13, 2015."

**{¶ 35}** Finally, the court noted, "[a]lthough not argued by [Clark], the Court further concludes that [his] plea was in conformance with the Criminal Rule[s] 32 and 32.1 which require a thorough examination of the Defendant at the time of a plea and at sentencing to determine whether he is aware of the consequences of the proceedings." The court concluded that it "does not find there is a possibility that the Petitioner would be entitled to relief from conviction if his allegations could be proven true. Accordingly, this Court is not required to conduct a hearing on the motion; the Court may issue a summary decision on the pleadings."

**{¶ 36}** Clark asserts two assignments of error herein. His first assigned error is as follows:

> THERE IS MATERIAL EVIDENCE WHICH WAS NOT AND COULD NOT BE AVAILABLE TO DEFENDANT-APPELLANT PRIOR TO HIS CONVICTION AND THIS ENTITLES DEFENDANT-APPELLANT TO POST-CONVICTION RELIEF.

**{¶ 37}** Clark cites the affidavit of the victim's mother and asserts that the information was "relayed to the caseworker at Jobs and Family Services who did not seem to take these statements seriously," especially when she stated that changes in the

victim's story "might happen." According to Clark, based "on this evidence which was not available to [him] prior to his plea, he is entitled to post-conviction relief under R.C. 2953.21. He should be returned to his status prior to entering the *Alford* plea, or, in the alternative, he should be granted an evidentiary hearing."

{¶ 38} The State responds that Clark's assigned error is barred by the doctrine of res judicata. According to the State, "the petition for post-conviction relief filed by Clark discloses absolutely no evidence which was not available to him when he entered his pleas and was sentenced in accord with the joint recommendation of the parties." According to the State, the "court below clearly did not believe that his wife, whom he had been in contact with before and after his pleas, did not disclose to him what he claims now to be vital information about his step-daughter's statements until many months after he was in prison." The State argues that this "information was also included in the discovery provided to Clark and his counsel well before the pleas." The State asserts that this Court indicated in remanding the matter to the trial court that it discounted the credibility of Clark's supporting affidavits.[2]

{¶ 39} We note that attached to the State's brief is an "Appendix" which includes a "Statement of (Victim)," dated February 9, 2015, as well as what the State identifies as the "relevant page of the case worker's report," from November 2014. These documents were not made part of the record below, and we will not consider them in our analysis.

---

[2] This Court's decision remanding the matter to the trial court noted that "it appears as though a number of the *Calhoun* factors apply to discount the credibility of Clark's supporting affidavits. However, it is not this court's place to judge the credibility of the affidavits or to rule on Clark's motion/petition, as the decision to grant or dismiss the petition with or without a hearing falls within the sound discretion of the trial court. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 45, 58." *Clark* at ¶ 23.

**{¶ 40}** In his reply brief, Clark again asserts that he "only became aware of certain evidence after he entered his *Alford* plea." He argues that in his affidavit of August 3, 2015, he averred that "he would not have entered into an *Alford* plea if he had know[n] that the 'Victim' had recanted."

**{¶ 41}** R.C. 2953.21 governs post-conviction relief and provides as follows:

Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a).

**{¶ 42}** The following is well established:

"A post[-]conviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." *State v. Stefen,* 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). See, also, *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48. To prevail on a petition for post-conviction relief, the defendant must establish a violation of his constitutional rights which renders the judgment of conviction void or voidable. R.C. 2953.21.

The post-conviction relief statutes do "not expressly mandate a

hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required." *State v. Jackson,* 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). Rather, in addressing a petition for post-conviction relief, a trial court plays a gatekeeping role as to whether a defendant will receive a hearing. *Gondor* at ¶ 51. A trial court may dismiss a petition for post-conviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus; *Gondor* at ¶ 51.

*State v. Eicholtz,* 2d Dist. Clark No. 13-CA-100, 2014-Ohio-3837, ¶ 13-14.

**{¶ 43}** We review the trial court's denial of Clark's petition for an abuse of discretion. *Id.* at ¶ 15, citing *Gondor* at ¶ 52.

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning

processes that would support a contrary result.

*AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 44}** Finally, regarding the State's assertion that Clark's petition is barred by the doctrine of res judicata, this Court has previously noted:

"The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings." *State v. Monroe,* Franklin App. No. 04AP-658, 2005-Ohio-5242. "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 226 N.E.2d 104. "Our statutes do not contemplate relitigation of those claims in post conviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom." *Id.* "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record." *State v. Aldridge* (1997), [120] Ohio

App.3d 122, 151, 697 N.E.2d 228. "Res judicata also implicitly bars a petitioner from 'repackaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *Monroe.*

*State v. Goldwire*, 2d Dist. Montgomery No. 20838, 2005-Ohio-5784, ¶ 11.

**{¶ 45}** We agree with the trial court that the victim's alleged recantation (in which, according to the victim's mother, the victim did not unequivocally deny Clark's guilt, as Clark suggests) was within Clark's knowledge prior to his plea. According to Clark's supplemental motion, he made admissions relating to the conduct alleged by the victim on October 30 and November 3, 2014. According to the victim's mother, the victim recanted her allegations in early November 2014, and the victim's mother then reported the alleged recantation to the caseworker. In the body of his second claim, as noted above, Clark asserted that the "only evidence made available *to Defendant and Defense Counsel* was a copy of the case worker's report, entailing a conversation with Biological Mother *about the alleged recanting * * *."* (Emphasis added). The fact that Clark cited his "Discovery Packet," including the "Darke County Jobs and Family Services Report," when he asserted that the victim's alleged recanting statements were reported to the agency, belied his assertion that he was not aware of the alleged recantation prior to his plea. (We note that, on appeal, Clark is not arguing, as he did below, that the State knowingly used false evidence to obtain his indictment and conviction.)

**{¶ 46}** Our conclusion is supported by the trial court's scheduling order. The court's December 24, 2014 "Discovery and Scheduling Order" set the matter for a pre-trial conference on January 5, 2015, and for trial on February 17-18, 2015. The court

ordered the State to "provide all discoverable material within 7 days in advance of the status conference," and both parties were ordered to continue to provide supplemental discovery. Discovery was initially due over a month before Clark entered his plea, and two months after the victim allegedly recanted.

{¶ 47} The fact that Clark subsequently received correspondence, in July 2015, after sentencing, from the victim's mother about the alleged recantation does not establish his lack of awareness prior to entering his plea. Since Clark failed to produce new evidence that rendered the judgment void or voidable, we conclude that his claim was barred by the doctrine of res judicata. In other words, his petition was barred by res judicata because it was not based on evidence outside his knowledge when he entered his *Alford* plea.

{¶ 48} Based upon the foregoing, we conclude that the trial court did not abuse its discretion, and Clark's first assignment of error is accordingly overruled.

{¶ 49} Clark's second assignment of error is as follows:

TRIAL COUNSEL FOR DEFENDANT-APPELLANT PROVIDED INADEQUATE ASSISTANCE OF COUNSEL IN THAT HE DID NOT PURSUE MATERIAL EVIDENCE THAT COULD HAVE PREVENTED DEFENDANT-APPELLANT FROM ENTERING AN ALFORD PLEA.

{¶ 50} Clark argues that defense counsel "did not provide him adequate assistance of counsel" in that counsel did not investigate allegations against Clark. "Specifically, as was substantiated in the Affidavits of [the victim's mother] and [Clark], the Victim when questioned stated that [Clark] did not touch her and that her uncles did." According to Clark, "[c]oupled with this is that [he] did not * * * admit guilt to the counts of

the indictment but accepted an *Alford* plea * * *." Clark asserts that, since he asserted that he was not guilty, "his defense counsel had the duty to investigate the allegations against him." Clark argues that the "burden for defense counsel to investigate was even stronger with [Clark's] Affidavit where [he] affirmed his innocence [and] held to his belief that the testimony against him was 'materially false evidence.' "

{¶ 51} As this Court noted in *Eicholtz,* 2d Dist. Clark No. 13-CA-100, 2014-Ohio-3837, ¶ 16-19:

" ' [I]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and the defense was prejudiced by counsel's ineffectiveness.' " *State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983), quoting *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980).

The Ohio Supreme Court has held that "in reviewing a petition for post-conviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact." *State v. Calhoun,* 86 Ohio St.3d 279, 284, 714 N.E.2d 905 (1999). "The trial court may, under appropriate circumstances in post-conviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant." *Id.*

In evaluating the credibility of affidavits in post-conviction proceedings, a court should consider all relevant factors, including "(1) whether the judge reviewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.* at 285. "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court." *Id.*

In order to demonstrate ineffective assistance of trial counsel, a defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that the defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of the defendant's trial or proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed .2d 674 (1984); *State*

*v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Hill,* 2d Dist. Greene No. 2004 CA 79, 2005-Ohio-3176, ¶ 13. "When the evidence a petitioner relies upon [sic] dehors the record that evidence must meet a threshold of cogency." *Id.* at ¶ 8. "Cogent evidence is that which is more than 'marginally significant' and advances a claim 'beyond mere hypothesis and desire for further discovery.' " *Id.*

**{¶ 52}** Finally, as this Court has previously noted:

> To prevail on an ineffective-assistance of counsel claim, a defendant must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that trial counsel's representation fell below an objective standard of reasonableness. *Id.* Prejudice exists and a reversal is warranted only where a defendant shows a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

*State v. Ward*, 2d Dist. Montgomery No. 26773, 2016-Ohio-5354, ¶ 9.

**{¶ 53}** We conclude that Clark's second assignment of error fails for multiple reasons. First, having concluded that the victim's alleged recantation was within Clark's knowledge at the time of his plea, we conclude that this assigned error is barred by res

judicata, since he could have raised the issue of his lawyer's failure to investigate prior to acceptance of the *Alford* plea deal.

**{¶ 54}** Additionally, the following exchange at Clark's plea further belies Clark's assertion that defense counsel was ineffective:

THE COURT: With regard to [Defense Counsel's] representation, he was appointed back in November. Have you had contact with [Defense Counsel] in those ensuing months?

THE DEFENDANT: Yes, sir.

THE COURT: Has he met with you often enough that you felt that he was working on your case?

THE DEFENDANT: Yeah, pretty much.

THE COURT: If you asked him questions, did he give you answers to those questions?

THE DEFENDANT: Yes, sir.

THE COURT: If you asked for legal advice, did he provide legal advice?

THE DEFENDANT: Yes, sir.

THE COURT: Any communication problems?

THE DEFENDANT: Not on my end, sir.

THE COURT: Was he talking above your head?

THE DEFENDANT: No.

* * *

THE COURT: Do you believe that he worked diligently on your

behalf to represent your interest in this case?

THE DEFENDANT:   *In light of what the outcome could be, yes, sir.*

THE COURT:   Any hesitation about his work on your behalf?

THE DEFENDANT:   No, sir.

(Emphasis added.)

**{¶ 55}**  After accepting Clark's plea, the court indicated to Clark that it would proceed to sentencing, and that the "State makes a recommendation first, [Defense Counsel] goes second, you're next."   The following exchange then occurred:

[PROSECUTOR]:   * * * Your Honor, this case involves a really terrible betrayal of a step child.   The young lady here was victimized, as the Court already mentioned, over a period of several years.   The child made these allegations of misconduct, sexual abuse directed at her.

The Defendant was interviewed by Detective Hawes of the Sherriff's Office and *he admitted to that conduct for the most part.   That's why we ended up here at this point.*

As I mentioned earlier, we had a lot of negotiations.   The first count did include a possibility of life without parole.   The others did not.   They were indefinite terms of ten years to life.   But at any rate, obviously, Mr. Clark was looking at a potential for a long, long time in prison.

The State and defense counsel negotiated on this.   I discussed the matter with the victim's father as well as the detective.   We agreed that we would accept a penalty of 25 years mandatory with no possibility that the Defendant would be released early.

We feel that that properly punishes Mr. Clark and protects the public from future misconduct, and we would ask the Court to adopt the mutual recommendation of the parties, Your Honor. Thank you.

* * *

THE COURT: * * * [Defense Counsel], your turn.

[DEFENSE COUNSEL]: * * * I would agree with [the Prosecutor]. This has been a difficult case. *By the time I was appointed, my hands were somewhat cuffed in being able to present a defenses* [sic] *that could have been successful at trial.*

Facing life imprisonment without parole on Count 1 and then ten counts of ten years to life, in looking at the possibility that Mr. Clark would spend the rest of his life in prison even though he subsequently basically indicated to me that he wished to redact or take back the interview, the statements he made in those interviews.

But, again, looking at the fact that we were looking at him spending the rest of his life in prison, we reluctantly entered into this agreement of sexual battery, five counts to serve 25 years.

Mr. Clark does not have a serious criminal past. This is sort of a blip on his radar. He understands the consequences of what we're doing today. We've had numerous conversations about this and *we were prepared as of about a week and a half ago to go to trial on this matter, but I did explain to him what I felt the evidence would show. And based upon that fact, we decided to enter this Alford plea of guilty.*

* * * Part of the consideration of doing the plea was to avoid a trial where the stepdaughter would have to testify. Part of it, in doing the Alford plea, was to alleviate the possibility of life imprisonment without [parole] at least on Count 1 and spending a significant amount of time in prison if he was found guilty on all 11 counts.

* * * And, again, reluctantly, we entered into this agreement with the State of Ohio as to the recommended 25 year sentence. * * *

THE COURT: * * * Mr. Clark, any statement, recommendations you want to make?

THE DEFENDANT: * * * 25 years is a long time and I've got some personal affects I'd like to get kind of straightened around if at all possible before I would do the prison sentence if at all possible.

THE COURT: Anything else, Mr. Clark?

THE DEFENDANT: No.

(Emphasis added.)

{¶ 56} It is undisputed that Clark made admissions regarding the victim's allegations, evidence of which would have been introduced at a trial, and as the trial court determined, Clark failed to demonstrate that further investigation into the alleged recantation (the credibility of which the trial court doubted, noting that the victim's mother's affidavit was based upon hearsay, as well as being internally inconsistent) would have altered the outcome of the trial.

{¶ 57} Finally, Clark acknowledged that he was satisfied with his counsel's representation, since he was spared the potential sentence of life in prison. Clark's plea

form further provided: "I am satisfied with my attorney's advice and competence." Since Clark failed to establish that further investigation by defense counsel would have prevented him from entering his plea, ineffective assistance of counsel is not demonstrated. Clark's second assignment of error is overruled.

**{¶ 58}** Since Clark's petition did not demonstrate a constitutional violation, or sufficient operative facts to establish substantive grounds for relief, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, P. J. and TUCKER, J., concur.

Copies mailed to:

R. Kelly Ormsby
Hilary Lerman
Hon. Jonathan P. Hein